UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LOUIS BARNES, JR., and PAMELA
ROBINSON,

                                        Plaintiffs,          17-CV-6364-CJS
                                                             DECISION and ORDER
        v.

ROCHESTER CITY SCHOOL DISTRICT,

                                        Defendant.

_____

## INTRODUCTION

Plaintiff Louis Barnes, Jr. ("Barnes"), and Plaintiff Pamela Robinson ("Robinson")
filed this action complaining of discrimination under Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e *et seq.*, Section 1 of the Civil Rights Act of 1866, 42 U.S.C
§ 1981, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–
97.  Now before the Court is a motion for summary judgment (ECF No. 81), pursuant to
Fed. R. Civ. P. 56, brought by Defendant Rochester City School District ("Defendant" or
"RCSD"), as well as Plaintiffs' cross-motion for leave to amend their complaint (ECF No.
103).  For the reasons discussed below, Defendant's motion for summary judgment is
granted, Plaintiffs' cross-motion for leave to amend is denied, and the action is dismissed.

## FACTUAL BACKGROUND

The following background has been drawn from the parties' respective statements
of fact and accompanying evidentiary materials and is undisputed, unless otherwise
noted.

<u>Louis Barnes, Jr.</u>

Barnes was first hired by Defendant in 1991 and held several positions, including that of Assistant Custodian Engineer, from 1993 to 2001.  Barnes Decl. at ¶ 2, ECF No. 99-2.  In 2001, Barnes left Defendant's employment but returned in 2012 as a temporary cleaner.  *Id.* at ¶¶ 3–4; Pl. Ex. 1 at 1–2, ECF No. 100-1.  Between August 2013 and February 2014, Barnes made several inquiries to Assistant Supervising Custodian Engineer Lillie Wilson ("Mr. Wilson"), Director of Human Capital Initiatives Derrick Jones ("Mr. Jones"), and Supervising Custodian Engineer Joseph Griffin ("Mr. Griffin") as to whether he would be given the opportunity for promotion back to Assistant Custodian Engineer.  Barnes Decl. at ¶ 8; *see*, Pl. Ex. 30, ECF No. 100-30.  After not receiving a promotion, Barnes filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 6, 2014, but on April 11, 2014, the EEOC dismissed Barnes' complaint.  Def. Statement of Facts at ¶¶ 9–10, ECF No. 81-1; Pl. Ex. 43, ECF No. 101-13.

Prior to the dismissal of his EEOC complaint, Barnes was selected to fill an Assistant Custodian Engineer position at School No. 8 by Principal Christine Calourie-Sickles ("Principal Sickles") on March 11, 2014.  Barnes Decl. at ¶ 10; Pl. Ex. 2, ECF No. 100-2.  When Barnes began working at School No. 8, the Custodian Engineer, Jerome Fronckowiak ("Mr. Fronckowiak"), was on leave.  Barnes Decl. at ¶ 12.  Barnes was eventually introduced to Mr. Fronckowiak by the Acting Custodian Engineer at School No. 8, David Bloom ("Mr. Bloom").  *See, id.* at ¶¶ 13–16.  When Mr. Bloom introduced the two men, Mr. Fronckowiak "got a very disgusted look on his face."  *Id.* at ¶ 17.  Barnes quickly left the room but heard Mr. Fronckowiak tell Mr. Bloom that he did not "want that n****r

working for him." *Id.* at ¶¶ 20, 22.  The Cafeteria Manager immediately outside the room also heard Mr. Fronckowiak's remark. *See, id.* at ¶¶ 21–23.

There were no complaints about the quality of Barnes' work during the 2014–15 school year, but on December 18, 2014, Barnes met with Principal Sickles after she received complaints that he had "grabbed" students earlier in the month. *See*, Jones Decl., Ex. A at 78–79, ECF No. 81-10.  Barnes also left a space heater running unattended in the Custodial Office on two occasions in February and March 2015, after which Mr. Griffin prohibited the use of a space heater in the Custodial Office.  Jones Decl., Ex. A at 54–57.  For the first part of the 2015–16 school year, Barnes was out on medical leave, and Ms. Laurel Avery-DeToy became principal of School No. 8. *See*, Avery-DeToy Decl. at ¶ 3, ECF No. 81-2.  When Barnes returned to work, he "routinely fail[ed] to complete his daily duties" and "[h]is poor job performance was unacceptable." *See*, Avery-DeToy Decl. at ¶ 4; Jones Decl., Ex. A at 58–67.

On March 5, 2016, Barnes took the civil service examination for a Custodian Engineer position and received a third-place score.  Pl. Ex. 9, ECF No. 100-9; *see*, Pl. Ex. 19, ECF No. 100-19.  The next month, on April 26, Barnes was the subject of a disciplinary meeting for his alleged failure to meet work expectations.  Pl. Ex. 8, ECF No. 100-8; Pl. Ex. 15, ECF No 100-15.  Nevertheless, Barnes applied for multiple Custodian Engineer positions during the summer of 2016 but did not receive any offers. *See*, Pl. Ex. 36, ECF No. 101-6; Def. Statement of Facts at ¶¶ 22–23.

In July 2016, a representative of Barnes' union, the Board of Education Non-Teaching Employees Union, AFSCME Local 2149 ("BENTE"), contacted Barnes and asked him if he would be interested in working at School No. 41.  Barnes Decl. at ¶ 57.

3

Barnes agreed, apparently under the impression that he would work in the Custodian Engineer role; when Barnes arrived at School No. 41, however, he learned that he was to serve as Assistant Custodian Engineer to the recently appointed Custodian Engineer, John Hutchings ("Mr. Hutchings").  *Id.* at ¶¶ 58–59; *see*, Def. Statement of Facts at ¶¶ 18–19.

On September 20, 2016, following an investigation, Barnes received a written reprimand for failing to carry out the duties of his position.  Pl. Ex. 16, ECF No. 100-16; *see,* Pl. Ex. 15 at 2, ECF No. 100-15; Def. Statement of Facts at ¶ 21.  Barnes' work performance was the subject of additional investigatory meetings on November 18 and December 1.  *See*, Pl. Ex. 15 at 3–4; Def. Statement of Facts at ¶¶ 19–20.  Barnes filed a charge of age, race, and sex discrimination, as well as retaliation, with the EEOC on December 1, 2016.  Pl. Ex. 4 at 3, ECF No. 100-4; *see*, Def. Statement of Facts at ¶ 12.  Defendant received notice of Barnes' complaint on December 7, and two days later, Barnes received a single-day suspension without pay.  Pl. Ex. 4 at 1; Pl. Ex. 17, ECF No. 100-17; *see*, Def. Statement of Facts at ¶ 21.  The EEOC ultimately dismissed Barnes' complaint on February 22, 2017.  Pl. Ex. 4 at 4; Def. Statement of Facts at ¶ 13.

<u>Pamela Robinson</u>

Robinson began working for Defendant in 1989 as a Cafeteria Manager and was appointed to an Assistant Director of School Food Services position in 2004.  Robinson Decl. at ¶¶ 3–4, ECF No. 99-1; *see*, Def. Statement of Facts at ¶ 59.  For the first five months of 2010, Robinson was promoted to Acting Director of School Food Services. Robinson Decl. at ¶ 5.  In September 2010, however, Defendant hired David Brown ("Mr. Brown"), a white man, from outside the district, to a provisional Director of School Food

Services position, and Robinson returned to her previous position of Assistant Director of School Food Services.  *Id.* at ¶ 7; Pl. Ex. 44 at 3, ECF No. 101-14; *see*, Def. Statement of Facts at ¶ 61.

At the beginning of 2014, Robinson, Mr. Brown, and a provisional Assistant Director of School Food Services, Gemma Humphries ("Ms. Humphries"),[1] a white woman, took the civil service examination for Director of School Food Services.  Robinson Decl. at ¶ 20; Pl. Ex. 45, ECF No. 101-15; *see*, Def. Statement of Facts at ¶ 62.  According to the certified list of eligible candidates released on May 7, 2014, Ms. Humphries placed first, Robinson placed second, and Mr. Brown placed third.  Pl. Ex. 45, ECF No. 101-15; *see*, Def. Statement of Facts at ¶¶ 62–64.  On June 11, 2014, Mr. Brown was promoted to Director of School Food Services, subject to a probationary period of one year.  Pl. Ex. 47, ECF No. 101-17; *see*, Def. Statement of Facts at ¶ 65.

Defendant's budget for the 2015–16 school year, however, reduced the number of Assistant Director of Food Services positions in the district from two to one.  Cutaia Decl., Ex. C at 294, ECF No. 81-7; *see*, Def. Statement of Facts at ¶ 71.  Ms. Humphries was again appointed to a provisional Assistant Director of School Food Services position on May 19, 2015—this time with a probationary period of eight weeks.  Pl. Ex. 55, ECF No. 101-25.  Shortly thereafter, Bandele Akinniyi ("Mr. Akinniyi"),[2] a Black man, was appointed to a provisional Director of School Food Services position on June 18, 2015.  *See*, Pl. Ex. 53, ECF No. 101-23.

---

[1] Ms. Humphries was appointed to a provisional Assistant Director of School Food Services position in October 2013.  *See*, Pl. Ex. 49, ECF No. 101-19.

[2] Prior to his appointment on June 18, 2015, Mr. Akinniyi was employed by two different external contractors but served as Defendant's Director of Food Service Operations and General Manager.  *See*, Pl. Ex. 62 at 3–4, ECF No. 101-32.

On June 29, 2015, Robinson was informed that her Assistant Director of School Food Services position had been eliminated, and as "least senior in the title," would have to retreat to a Cafeteria Manager position.  Pl. Ex. 54, ECF No. 101-24; *see*, Def. Statement of Facts at ¶ 76.  Ms. Humphries, however, was later appointed to a non-provisional Director of School Food Services position on September 2, 2015.  Pl. Ex. 56, ECF No. 101-26; *see*, Def. Statement of Facts at ¶ 83.  As such, for the 2015–16 school year, Mr. Brown and Ms. Humphries held non-provisional Director of School Food Services positions, and Mr. Akinniyi held a provisional Director of School Food Services position, and Robinson held a Cafeteria Manager position.

## DISCUSSION

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also, Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party").  "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks and citation omitted).

A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See, Tolan v. Cotton*, 572 U.S. 650, 657 (2014).  A "party asserting that a fact cannot be . . . genuinely disputed must support that assertion

by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, the non-movant cannot oppose a properly supported summary judgment motion with bald assertions that are not supported by the record. *See, Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).

The non-movant must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. Otherwise, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record, or by showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Defendant seeks summary judgment on Plaintiffs' Title VII, § 1981, and NYSHRL claims.[3] Discrimination claims under Title VII, § 1981, and the NYSHRL are all analyzed under the three-step, burden-shifting evidentiary framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Williams v. MTA Bus Co.*, 44

---

[3] In their memorandum of law in opposition to Defendant's motion for summary judgment, Plaintiffs abandon their claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("ADEA"), and the New York Civil Service Law. *See*, Pl. Mem. of Law at 26, ECF No. 102.

F.4th 115, 125 (2d Cir. 2022); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).  First, a plaintiff must establish a *prima facie* case of discrimination or retaliation by showing "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory [or retaliatory] intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks and citation omitted).

"If the plaintiff successfully establishes a *prima facie* case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory [or retaliatory] reason for the adverse employment action."  *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (internal quotation marks and citation omitted).  The employer's "explanation must, if taken as true, '*permit* the conclusion that there was a nondiscriminatory [or nonretaliatory] reason for their actions."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  "If the employer carries that burden, the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination [or retaliation]."  *Walsh*, 828 F.3d at 75 (internal quotation marks and citation omitted); *see, Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (holding that the "but-for" causation standard applies to claims under 42 U.S.C. § 1981); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (holding that the language of Title VII's antiretaliation provision requires proof of "but-for"

causation); *see also, Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020) ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.'  In the language of law, this means that Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation." (internal quotation marks and citations omitted)).

Plaintiffs' NYSHRL Claims

Defendant argues that Plaintiffs' NYSHRL claims must be dismissed because of Plaintiffs' failure to comply with the notice requirements of New York Education Law § 3813.  *See*, Def. Mem. of Law at 11–13, ECF No. 81-46.  The Court agrees.

New York Education Law § 3813 provides:

> No action or special proceeding, for any cause whatever, except as hereinafter provided, . . . shall be prosecuted or maintained against any school district . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1).  "The purpose of Section 3813 . . . is to give a school district prompt notice of claims so that investigation may be made before it is too late for investigation to be efficient."  *Clark ex rel. Clark v. Grp. Plan for Emps. of N. Tonawanda Pub. Schs.*, 845 F. Supp. 117, 122 (W.D.N.Y. 1994) (internal quotation marks and citation omitted); *see, Rure Assocs, Inc. v. DiNardi Const. Corp.*, 917 F.2d 1332, 1334–35 (2d Cir. 1990).  This notice-of-claim requirement is a condition precedent to filing suit.  *See, Parochial Bus Sys., Inc. v. Bd. of Educ. of New York*, 458 N.E.2d 1241, 60 N.Y.2d 539, 547 (1983); *Lewandowski v. Clyde-Svannah Cent. Sch. Dist. Bd. of Educ.*, 143 A.D.3d

1278 (4th Dep't 2016); *accord, Olin v. Rochester Cty. Sch. Dist.*, 596 F. Supp. 3d 475, 483 (W.D.N.Y. 2022).

Here, neither Barnes nor Robinson allege, or provide evidence, that they filed a notice of claim under Education Law § 3813(1), and as such, Plaintiffs' NYSHRL claims must be dismissed.  *See, e.g.*, *Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 654 (S.D.N.Y. 2005) ("Plaintiff's complaint does not allege that he has satisfied the notice of claim requirement, and in response to the District's motion plaintiff has not proved compliance with the requirement."); *see also, Parochial Bus Sys., Inc.*, 60 N.Y.2d at 549 ("The Legislature has spoken unequivocally that no action or proceeding may be prosecuted or maintained against any school district . . . unless a notice of claim has been '*presented* to the *governing body*' and this court may not disregard its pronouncement." (emphasis in original) (internal citation omitted) (quoting N.Y. Educ. Law § 3813(1))).

<u>Robinson's Title VII Claims</u>

Defendant similarly argues that Robinson's Title VII claims must be dismissed because she failed to exhaust her administrative remedies.  Def. Mem. of Law at 7–11.  Again, the Court agrees.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (internal quotation marks and citation omitted).  "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Id.* (internal quotation marks and citation omitted); *see,* 42 U.S.C. § 2000e-5(e)(1).  While "[c]laims concerning discrete acts outside this window will be time

barred[,] . . . claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Id.* (internal quotation marks and citations omitted). The second precondition to filing a Title VII claim in federal court is the receipt of a "right-to-sue" letter from the EEOC. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006); A plaintiff must file suit within ninety days of receipt of the right-to-sue letter. *See,* 42 U.S.C. § 2000e-5(f)(1).

Under the so-called "single filing rule," however, "where one plaintiff has filed a timely EEOC complaint, other non-filing plaintiffs may join in the action if their individual claims 'aris[e] out of similarly discriminatory treatment in the same time frame.'" *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir. 1986) (alteration in original) (quoting *Ezell v. Mobile Hous. Bd.*, 709 F.2d 1376, 1381 (11th Cir. 1983)). Importantly, "there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim. Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group." *Tolliver v. Xerox Corp.*, 981 F.2d 1052, 1058 (2d Cir. 1990). At a very basic level, piggybacked claims must "ar[ise] out of virtually identical circumstances, thereby rendering additional filings a wholly fruitless endeavor." *Snell*, 782 F.2d at 1101 (internal quotation marks and citation omitted).

Here, Robinson seeks to piggyback her Title VII claims off those in Barnes' charge of discrimination filed with the EEOC on December 7, 2016. *See*, Moyer Decl., Ex. B at 3, ECF No. 81-30. Barnes alleged that he was passed over for promotion to multiple

Custodian Engineer positions between May 16 and August 12, 2016, because of his age, race, and sex, as well as in retaliation for filing a previous charge of discrimination with the EEOC. *Id.* Although Robinson's Title VII claims are similar to Barnes' claims, the Court concludes that the single filing rule is inapplicable here for two reasons.

First, Defendant is not "a work unit of modest size" such that a "mere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule.'" *Tolliver*, 918 F.2d at 1058. Unlike a jail or local transit union, Defendant is a municipal school district that employed a total of 5,549 individuals at one point during the relevant period. *See*, Cutaia Decl., Ex. A at 5, ECF No. 81-5. Plaintiffs worked in different departments at different facilities, and while Custodial Engineer positions were filled by principals at the school level, provisional and permanent appointments to a Director of School Food Services position required the approval of Defendant's Board of Education. *Compare, e.g.*, Pl. Ex. 21, ECF No. 100-21 (selection of candidate from list of eligibles for Custodian Engineer vacancy by principal of School No. 15), *with* Pl. Ex. 59, ECF No. 101-29 (minutes from meeting of Defendant's Board of Education approving permanent appointment of Ms. Humphries to Director of School Food Services on August 27, 2015). Second, Defendant's alleged discriminatory and retaliatory conduct against Robinson occurred well outside the 300-day limitations period covered by Barnes' charge of discrimination. Defendant informed Robinson of her demotion to Cafeteria Manger on June 29, 2015, *see*, Pl. Ex. 54, but Barnes did not file his charge of discrimination until almost eighteen months later, *see*, Moyer Decl., Ex. B at 3.

"The underlying purpose of the [EEOC] filing requirement [is] 'to give prompt notice to the employer'. . . ." *Adams v. N.Y.S. Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y.

2010) (quoting *Snell*, 782 F.2d at 1100). The Court is not persuaded that Barnes' charge of discrimination gave Defendant sufficient notice of its alleged discriminatory actions against Robinson that had occurred on, and prior to, June 29, 2015. As such, Robinson's Title VII claims against Defendant must be dismissed for failure to exhaust administrative remedies.

<u>Barnes' Title VII Claims</u>

The Court next turns to Barnes' discrimination, retaliation, and hostile work environment claims under Title VII. Defendant argues that Barnes does not have sufficient evidence to sustain *prima facie* cases of discrimination, retaliation, or a hostile work environment. *See*, Def. Mem. of Law at 15–18. Defendant continues that, even if Barnes has *prima facie* cases, he was not promoted to a Custodian Engineer position because of a legitimate, nondiscriminatory and nonretaliatory reason—his poor work performance. *Id.* at 15. Barnes responds that Mr. Griffin, through Mr. Jones, held "<u>control</u> of the selection process" for Custodian Engineer positions and "favored white-skinned persons, both Caucasian and Hispanic, over Black-skinned persons." Def. Mem. of Law at 17–18 (emphasis in original). According to Barnes, therefore, there is "a triable question of fact as to the identity of the ultimate decision maker with respect to the promotions to Custodian Engineer . . . in 2016 and 2017." *Id.* at 16.

Although not articulated as such, Barnes seeks to recover under what is called a "cat's paw" theory of liability. *See, Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271–72 (2d Cir. 2016). "[T]he 'cat's paw' metaphor now 'refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive but who has been manipulated by a

subordinate who does have such a motive and intended to bring about the adverse employment action[.]'" *Id.* at 272 (quoting *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012)). Accordingly, "[b]ecause the supervisor, acting as agent of the employer, has permitted himself to be used 'as the conduit of [the subordinate's] prejudice,' that prejudice may then be imputed to the employer liable for employment discrimination." *Id.* (second alteration in original) (internal citation omitted) (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)).

Barnes' cat's paw theory proceeds as follows: (1) in 2014, Mr. Fronckowiak, Barnes' supervisor at School No. 8, called Barnes a racial slur in a private conversation with Mr. Bloom, which Barnes overheard; (2) beginning in 2016, after Principal Avery-DeToy took over for Principal Sickles, Mr. Fronckowiak failed to meet work expectations and unfairly blamed those failures on Barnes; (3) when Barnes began applying for Custodial Engineer positions in 2016, Mr. Griffin, through Mr. Jones, ensured that Barnes was not selected for a position; and (4) Mr. Griffin took such action because of his preference for white-skinned individuals and to retaliate against Barnes for filing a charge of age discrimination with the EEOC in 2014.

*Hostile Work Environment Claim*

The Court first considers whether Mr. Fronckowiak's behavior could create a hostile work environment as a matter of law. "To establish a *prima facie* case of hostile work environment, the plaintiff must show that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objectionable conduct to the employer." *Tolbert*, 790 F.3d at 439 (italics added) (quoting

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).  The existence of a hostile work environment is based on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see, Feingold v. New York*, 366 F.3d 139, 150 (2d Cir. 2004).  Generally speaking, "incidents [of harassment] must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed persuasive.'"  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry*, 115 F.3d at 149).  But "a single act can create a hostile working environment if it in fact 'work[s] a transformation of the plaintiff's workplace.'"  *Feingold*, 366 F.3d at 150 (quoting *Alfano*, 294 F.3d at 374); *see, Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).

In this case, given the totality of the circumstances, Mr. Fronckowiak's conduct did not create a hostile work environment.  Mr. Fronckowiak's use of a racial slur was reprehensible, but it occurred during a private conversation with Mr. Bloom and "d[oes] not qualify as 'a steady barrage of opprobrious racial comments' that altered the conditions of [Barnes'] employment."  *See, Tolbert*, 790 F.3d at 439 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).  And while Mr. Fronckowiak might have unfairly blamed Barnes for his own derelictions of duty beginning in 2016, these incidents occurred after the two men worked together for an entire school year under Principal Sickles, where, as Barnes states in his own declaration, there were no complaints about the quality of his work.  *See*, Barnes Decl. at ¶ 24.  The 2016 incidents are too remote in time from Mr. Fronckowiak's use of a racial slur to be attributable to discriminatory animus.

*See, e.g.*, *Buckman v. Caylon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 336 (S.D.N.Y. 2011) (concluding that a racially discriminatory remark made five months before the plaintiff's discharge was "too remote in time and context to support a reasonable inference" of discrimination).

Further, Mr. Fronckowiak's conduct cannot be imputed to Defendant. While Barnes testified that he reported Mr. Fronckowiak's "harassment" to Principal Avery-DeToy and Mr. Jones, *see*, Moyer Decl., Ex. K at 4–5, ECF No. 81-39, he also testified that he never filed an internal harassment complaint, *see*, Moyer Decl., Ex. C at 6, ECF No. 81-31. Under Superintendent's Regulation 0100-R, any complaints of discrimination or harassment, including those brought verbally and informally, must be documented in writing by either the school principal or the Chief of Human Capital Initiatives. *See*, Moyer Decl., Ex. F at 4, ECF No. 81-34. Barnes does not allege, or provide any evidence, that Principal Avery-DeToy or Mr. Jones failed to investigate his complaint of harassment against Mr. Fronckowiak, and Barnes cannot rely on his own self-serving testimony to survive Defendant's motion for summary judgment. *See, e.g.*, *Brusso v. Imbeault*, 699 F. Supp. 2d 567, 583 (W.D.N.Y. 2010). As such, Defendant's motion for summary judgment on Barnes' Title VII hostile work environment claim is granted.

*Discrimination and Retaliation Claims*

The Court assumes, for the sake of argument, that Barnes has *prima facie* cases of discrimination and retaliation. *See, e.g.*, Kelly Decl., ¶ 31, ECF No. 99-4 ("Mr. Griffin stated words to the effect that Mr. Barnes was a nuisance or a pain in the neck, in that he was 'habitual' in his complaints regarding the District."). Defendant asserts that Barnes was not promoted to Custodian Engineer because of his poor work performance, *see*,

Def. Mem. of Law at 15, and poor work performance is a legitimate, nondiscriminatory and nonretaliatory reason for an adverse employment action, *see, e.g.*, *Jain v. McGraw-Hill Cos., Inc.*, 506 F. App'x 47, 48 (2d Cir. 2012); *Hill v. N.Y.C. Hous. Auth.*, 220 F. Supp. 3d 499, 508 (S.D.N.Y. 2016).  But Barnes' attempt to show Mr. Griffin's racial animus is woefully inadequate to meet his evidentiary burden.[4]

There is no direct evidence of Mr. Griffin's racial animus.  While Mr. Griffin did mention that Barnes "had had a case against [Defendant] in the past," Kelly Decl. at ¶ 32, Barnes' prior EEOC complaint was for age discrimination, not race discrimination, *see*, Moyer Decl., Ex. A at 2, ECF No. 81-29.  "It is axiomatic that the plaintiff . . . show that the hostile conduct occurred because of a protected characteristic," *Tolbert*, 790 F.3d at 439, and the only direct evidence of any sort of discriminatory animus on the part of Mr. Griffin is related to Mr. Barnes' age, which is not a protected class under Title VII, *see*, 42 U.S.C. § 2000e-2(a)(1).  As for circumstantial evidence of Mr. Griffin's racial animus, Barnes points to the characteristics of the individuals who were ultimately appointed to Custodian Engineer positions, relying on the declaration of Lillie J. Wilson ("Mr. Wilson"), who was Defendant's Assistant Supervising Custodian Engineer during the relevant period.  *See*, Def. Mem. of Law at 17–18.  According to Mr. Wilson, out of the nine

---

[4] To the extent Barnes' Title VII race discrimination claim is based on an "ongoing course of unusual and severe scrutiny" by Mr. Fronckowiak, Principal Avery-DeToy, and Mr. Griffin, such a claim would fail as a matter of law because heightened scrutiny is not an adverse employment action.  *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011); *Moy v. Perez*, 712 F. App'x 38, 41 (2d Cir. 2017); *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 239 (W.D.N.Y. 2011).

individuals appointed to the Custodian Engineer positions at issue, five were Hispanic, one was white, and three were Black.[5]  *See*, Wilson Decl. at ¶¶ 9, 46–47, ECF No. 99-3.

"A plaintiff may raise . . . an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).   The comparator must be "similarly situated in all material respects," meaning that they "were subject to the same performance evaluation and discipline standards."  *Id.* at 39–40 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  But "[a] plaintiff cannot merely rest on 'a demonstration of different treatment from persons similarly situated'" and must instead "'prove that the disparate treatment was *caused by* the impermissible motivation.'"  *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (emphasis in original) (internal citation omitted) (quoting *Bizzarro v. Miranda*, 394 F.3d 74, 53 (2d Cir. 1996)).

Here, it is difficult to say that the other individuals outside of Barnes' protected racial class who received Custodian Engineer positions were subject to the same performance evaluation and discipline standards because they did not work directly under the same Custodian Engineers or school principals.   But assuming they are similarly situated, Barnes does nothing more than "merely rest on a demonstration of different treatment from persons similarly situated[.]"  *See, Hu*, 927 F.3d at 91 (alteration in original) (internal quotation marks and citation omitted).   Barnes cannot rely on Mr. Wilson's rather conclusory statement that he "believe[d] Mr. Griffin's animosity toward[s] Mr. Barnes was

---

[5] The Court recognizes that one of the three Black individuals, Gary Coan, was appointed to a Custodian Engineer position at School No. 41 only after the white candidate, John Hutchings, did not successfully complete his probationary period.  *See*, Wilson Decl. at ¶¶ 43–47.

based upon Mr. Barnes' race and color," Wilson Decl. at ¶ 48, and Barnes' own subjective belief that Mr. Griffin favored Hispanic individuals over Black individuals, *see*, Moyer Decl., Ex. K at 9–12.  What is more, any potential liability cannot be imputed to Defendant under a cat's paw theory because there is no evidence that Defendant was negligent, *i.e.*, that Mr. Jones or any school principal involved in the hiring decisions knew, or should have known of, Mr. Griffin's alleged racial animus.  *See, e.g.*, *Vasquez*, 835 F.3d at 274–75.  For all these reasons, there is no genuine issue of material fact as to who made the ultimate hiring decisions regarding the Custodian Engineer positions, and Defendant's motion for summary judgment on Barnes' Title VII discrimination and retaliation claims is granted.

Plaintiffs' Section 1981 Claims

Defendant also seeks summary judgment on Plaintiffs' § 1981 claims, arguing that neither Barnes nor Robinson has provided any evidence that they were discriminated against solely because of their race.  *See*, Def. Mem. of Law at 21–22.  The Court agrees that Defendant is entitled to summary judgment on Plaintiffs' § 1981 claims.

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (alteration in original) (quoting 42 U.S.C. § 1981(a)).  But the statute "does not provide a separate private right of action against state actors," *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018), because "the express action of law provided by [42 U.S.C.] § 1983 for the deprivation of any rights, privileges, or immunities secured by the constitution and law, provides the exclusive federal damages remedy for a violation of the rights guaranteed by § 1981 when the claim

is pressed against a state actor," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736 (1989) (internal quotation marks omitted). Defendant RCSD is a municipal school district and may only be held liable for violations of § 1981 through § 1983. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004). Although Plaintiffs did not follow this procedural mechanism, the Court will construe their § 1981 claims as if properly brought against Defendant under § 1983. *See, Duplan*, 888 F.3d at 616; *Kirkland-Hudson v. Mount Vernon Cty. Sch. Dist.*, 665 F. Supp. 3d 412, 447 (S.D.N.Y. 2023) ("[T]he Court considers Plaintiff's § 1981 claims under § 1983, as courts have done in the wake of *Duplan*.").

"[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality[,] . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). These claims are known as "*Monell* claims." *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1993). "Under *Monell*, '[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "A plaintiff may demonstrate a policy or custom exists by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate

20

> training or supervision to subordinates to such an extent that it amounts to
> deliberate indifference to the rights of those who come into contact with the
> municipal employees."

*Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 233 (W.D.N.Y. 2022) (quoting *Jones*

*v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016)); *see, Patterson*, 376

F.3d at 226.  Ultimately, however, a municipal entity cannot be held liable under *Monell*

based on a *respondeat superior* theory of liability.  *See, Agosto v. N.Y.C. Dep't of Educ.*,

982 F.3d 86, 97–98 (2d Cir. 2020); *Patterson*, 375 F.3d at 226; *see also, St. Louis v.*

*Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when,

and only when, their official policies cause their employees to violate another person's

constitutional rights.").

In this case, Plaintiffs' first amended complaint ("FAC") alleges that Defendant "has

a custom and/or a policy of violating and/or subverting and/or bypassing the Civil Service

Law of the State of New York in order to discriminate against Plaintiffs and other similarly

situated persons on the basis of their race (Black) and color (Black) and to deny them

their right to make and enforce contracts for employment with [Defendant] in violation of

42 U.S.C. § 1981."  FAC at ¶ 2, ECF No. 12.  The FAC further alleges:

> Defendant RCSD's actions toward all three Plaintiffs as well as its actions
> toward other Black employees demonstrate that Defendant RCSD has a
> policy and/or custom of denying to Black employees their right to make and
> enforce employment contracts that are equal to the contracts that
> Defendant RCSD grants to white employees, in violation of 42 U.S.C.
> § 1981.  Additionally, Defendant RCSD violates and/or subverts and/or
> bypasses the NYS CSL in carrying out its policy and/or custom to
> discriminate against Black employees in regard to their employment
> contracts, in violation of 42 U.S.C. § 1981.

*Id.* at ¶ 67.  But in response to Defendant's motion for summary judgment, Plaintiffs do not provide any evidence of a policy or custom by which Defendant circumvented the New York State Civil Service Law to discriminate against them because of their race.

Barnes argues that Defendant discriminated against him because Mr. Griffin exercised control over the hiring process for Custodian Engineer positions.  However, he does not explain how Mr. Griffin did so pursuant to a policy or custom of Defendant's or how the hiring process for Custodian Engineer positions was ultimately violative of the Civil Service Law.   Similarly, Robinson argues that Defendant "essentially bent over backwards to manipulate the Civil Service rules in order to place Gemma Humphries into a permanent position of Assistant Director of [School] Food Services before the end of the 2014–2015 school year."  Def. Mem. of Law at 20.  However, the same logic would apply to Mr. Akinniyi's appointment to a provisional Director of School Food Services position, as Mr. Brown already held the one Director of School Food Services position approved in Defendant's yearly budget.  *See, id.* at 13–14.[6]  And, again, Robinson does not explain how Ms. Humphries' and Mr. Akinniyi's appointments violated the Civil Service Law or was racially discriminatory to her.  As such, Defendant's motion for summary judgment on Plaintiffs' § 1981 claims is granted.

---

[6] Robinson also points to an email from Mr. Jones to Patty English ("Ms. English") at the Monroe County Civil Service Commission on December 19, 2014, informing Ms. English that Robinson would be transitioning from the role of Assistant Director of School Food Services to Cafeteria Manager and asking whether that change would be considered a reinstatement of a provisional appointment.  Def. Mem. of Law at 12; *see,* Pl. Ex. 51 at 1, ECF No. 101-21.  Ms. English responded that such a transition "would be a reinstatement since [Robinson] previously held the position of Cafeteria Manager" and "[s]ince it appear[ed] to be a demotion, the [Civil Service Commission] would need a memo from [Robinson] if [it was] a voluntary demotion."  Pl. Ex. 51 at 2.  While this is evidence that Defendant had planned to demote Robinson before the approval of Defendant's 2015–16 budget, it does not provide any evidence of "but-for" racial discrimination pursuant to a policy or custom.

<u>Plaintiffs' Motion for Leave to Amend</u>

Lastly, the Court addresses Plaintiffs' motion for leave to amend their complaint and add a Title IX claim (ECF No. 103). The Second Circuit recently described the standards for amending a complaint as follows:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth tree standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up[on] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (first alteration in original) (first quoting Fed. R. Civ. P. 15(a)(2); then quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); and then quoting Fed. R. Civ. P. 16(b)(4)).

In this case, the time during which Plaintiffs could amend as a matter of right under Rule 15(a)(1) has expired, and in the Court's scheduling order dated January 24, 2018, the deadline for motions to amend was set to March 26, 2018. Scheduling Order at 2, ECF No. 20. The scheduling order expressly stated that "[n]o extension of the above cutoff dates will be granted upon written application, made <u>prior to the cutoff date</u>, showing

good cause for the extension." *Id.* at 4 (emphasis in original).  As such, Plaintiffs' motion for leave to amend is governed by Rule 16(b)(4)'s "good cause" standard.

Plaintiffs seek leave to amend their complaint based on the Second Circuit's then-recent holding that "Title IX allows a private right of action for a university's intentional gender-based discrimination against a faculty member . . . ."  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 106 (2d Cir. 2022).  Generally speaking, "[a] finding of 'good cause' depends on the diligence of the moving party," *Parker v. Columbia Pictures*, 204 F.3d 326, 340 (2d Cir. 2000), but while there is no definition of "good cause" under Rule 16, "a significant change" in governing law can be considered "good cause" for relief from a final judgment under Rule 60(b)(5).  *See, SEC v. Musk*, 2023 WL 3451402, at *1 (2d Cir. May 15, 2023).  The Court is not prepared to say that an arguably precedential opinion by Second Circuit would not be good cause for leave to amend under Rule 16; however, even under the more lenient Rule 15 standard, "leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss," and "when the motion to amend is filed after the close of discovery and the relevant evidence is before the court, a summary judgment standard will be applied instead."  *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014); *see, Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

Here, Plaintiffs' motion for leave to amend is futile for two reasons.  First, while Title IX provides a private right of action for an educational institution's intentional gender-based discrimination against employee, such discrimination must occur in the context of a disciplinary proceeding.  *See*, 20 U.S.C. § 1681(a); *Roe v. St. John's Univ.*, 2024 WL

357997, at *5 (2d Cir. Jan. 31, 2024) ("'[G]enerally,' a plaintiff 'attacking a university disciplinary proceeding on grounds of gender bias' asserts that the university is liable under one or both of two separate theories: an erroneous outcome theory or a selective enforcement theory." (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994))). There is no allegation in Plaintiffs' proposed second amended complaint ("SAC") that Robinson was ever involved in a disciplinary proceeding,[7] and while Barnes asserts that he was "unfairly and discriminatorily disciplined," that allegation is brought in the context of retaliation for filing a charge of age discrimination with the EEOC. *See*, SAC, ¶ 24, ECF No. 103-2. Second, although the Second Circuit has not expressly ruled on the issue, discrimination and retaliation claims under Title IX are likely subject to a "but-for" causation standard. *See, Radwan v. Manuel*, 55 F.4th 101, 131 (2d Cir. 2022). A plaintiff cannot point to an instance of discrimination or retaliation and argue that it occurred solely because of the plaintiff's race or, in the alternative, solely because of the plaintiff's sex or gender.

In sum, Plaintiffs' motion for leave to amend asks the Court to take the view that Title IX allows employees to circumvent the procedural requirements of Title VII simply because the employer is an educational institution receiving federal funds. There is no

---

[7] Plaintiffs curiously add Kim Nixon ("Ms. Nixon") back as a plaintiff in their proposed SAC. *See*, SAC at ¶¶ 29–36. Through stipulation, Ms. Nixon and Defendant agreed to the dismissal, with prejudice, of all claims and causes of action involving Ms. Nixon and Defendant. *See*, Stipulation and Dismissal at 1, ECF No. 36. Ms. Nixon may not rejoin Plaintiffs' lawsuit at this stage of the litigation. *See, e.g.*, *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986) ("A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. Such a dismissal constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." (italics in original) (internal quotation marks and citations omitted)).

evidence that Congress intended this result.  For all these reasons, Plaintiffs' motion for leave to amend their complaint is denied as futile.

CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (ECF No. 81) is GRANTED.  Plaintiffs' Motion for Leave to Amend (ECF No. 103) is DENIED.  Plaintiffs' complaint is DISMISSED, and the Clerk of the Court is directed to close this action.

SO ORDERED.

CHARLES J. SIRAGUSA
United States District Judge

DATED:    December 20, 2024
          Rochester, NY